## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BETTY J. SCHARA, as Special
Administrator of the Estate of
RAYMOND R. SCHARA, Deceased,
and as Heir-at-law,

                    *Plaintiff*,

  vs.

PLEASANT VALLEY NURSING, LLC
as owner of PLEASANT VALLEY
MANOR, LLC and/or
PLEASANT VALLEY MANOR, and
JAMES M. McDERMOTT, D.O.,

                   *Defendant.*

Case No. 07-1165-EFM

## MEMORANDUM AND ORDER

As a general rule, a medical malpractice case requires expert testimony to the jury to establish what the standard of care should be in the professional setting, and to establish that the failure to conform to that standard caused or contributed to the complained of injuries.  That is because these specialized matters are not generally considered to be within the general knowledge or understanding of a layperson.  A narrow exception exists to this rule, called the common knowledge exception, where the matters alleged are so obviously lacking in care, and the detrimental results so clearly arise from such lack of care, that the failure to meet the standard of care is apparent and within the common knowledge and experience of mankind generally.  Because the Plaintiff in

this case failed to designate an expert regarding standard of care and causation with respect to her claims against defendant Pleasant Valley Nursing LLC, within the time set by the Court for such designation, defendant moves for summary judgment on the claims against it.[1]  Because the Court concludes that Plaintiff's claims against Pleasant Valley fall within the common knowledge exception, as explained below, the Court denies the motion.

## I. Background

While Plaintiff's decedent, Raymond Schara, was a patient at Missouri Baptist Medical Center, he developed Methicillin Resistant Staphylococcus Aureus ("MRSA").  On or about June 30, 2005, Raymond Schara was admitted into Pleasant Valley Manor from Missouri Baptist Medical Center, for IV therapy with Vancomycin to combat the MRSA infection.  Medical records from Missouri Baptist transferred to Pleasant Valley Manor included a progress record indicating that the patient was to continue to have Vancomycin administered through July 18, 2005.  On or about July 5, 2005, blood cultures were drawn from Raymond Schara by Pleasant Valley Manor staff, and submitted to a lab for analysis, which returned negative for MRSA.  Defendant James M. McDermott, D.O., thereafter ordered the Vancomycin therapy stopped on July 11, 2005, and dismissed Raymond Schara from Pleasant Valley Manor on July 12, 2005.  Plaintiff contends that Raymond Schara suffered a return of the MRSA, and he died on September 1, 2005.  Plaintiff contends that he would not have died had the Vancomycin treatment continued to completion as instructed in the medical records.

Plaintiff brought claims of medical negligence and wrongful death against Dr. McDermott and Pleasant Valley Nursing, LLC, the owner of Pleasant Valley Manor.  She claims Pleasant Valley

---

[1]Doc. 69.

controlled Raymond Schara's medical records and was negligent in failing to advise Dr. McDermott

of the instructions to continue the Vancomycin treatment through July 18 (Dr. McDermott claims

to be unaware of those instructions).   Defendant Pleasant Valley moves this Court for summary

judgment due to Plaintiff's failure to disclose expert testimony establishing the standard of care

required of Pleasant Valley in this regard, and it's deviation therefrom.

## II.  Memorandum and Opinion

### A. Standard of Review

The Court is familiar with the standards governing consideration of a motion for summary

judgment.  Summary judgment is appropriate if the moving party demonstrates that "there is no

genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2]  "An

issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3]

A fact is "material" when "it is essential to the proper disposition of the claim."[4]  The court must

view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

The moving party bears the initial burden of demonstrating the absence of a genuine issue

of material fact.[6]  In attempting to meet this standard, the moving party need not disprove the

---

[2]Fed. R. Civ. P. 56(c).

[3]*Haynes v. Level 3 Comm., LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4]*Id.*

[5]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

Finally, summary judgment is not a "disfavored procedural shortcut," but an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[7]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[8]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[10]*Adler*, 144 F.3d at 671.

[11]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[12]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**B. Analysis**

Kansas law governs the question of whether expert testimony is required in a medical negligence case.[14]  Under Kansas law, expert testimony is ordinarily required to show that the health care provider breached the standard of care.[15]  However, an exception to the requirement that expert testimony is required in medical malpractice cases exists "where the lack of reasonable care or the existence of proximate cause is apparent to the average layman from common knowledge or experience."[16]

> This common knowledge exception applies if what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally.[17]

> Kansas courts have identified three essential elements to the common knowledge exception:

> (1) the plaintiff has asserted a claim of medical malpractice; (2) the care or result of the care is patently bad; and (3) a person without the pertinent medical knowledge can assess the wrongfulness of the diagnosis, treatment, or care and attribute the plaintiff's injury to the wrongful conduct without the assistance of expert testimony.[18]

Whether or not the common knowledge exception applies to a given set of facts is a question of law.[19]  Defendant's brief commendably provides an comprehensive overview of Kansas cases addressing the exception, correctly arguing that it is a narrow exception and rarely applied.  Among

---

[14]*Treaster v. Healthsouth Corp.*, 442 F. Supp. 1171, 1180-81 (D. Kan. 2006).

[15]*Hare v. Wendler*, 263 Kan. 434, 440, 949 P.2d 1141, 1145-46 (1997).

[16]*Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988).

[17]*Webb v. Lungstrum*, 223 Kan. 487, 490, 575 P.2d 22, 25 (1978) (citations omitted).

[18]*Perkins v. Susan B. Allen Mem'l Hosp.*, 36 Kan. App. 2d 885, 889, 146 P.3d 1102, 1106 (2006) (citations omitted).

[19]*Id*. at 888, 146 P.3d at 1105.

the cases where it has been applied so that expert testimony was not required are instances where a nursing home patient attacked another where the nursing home was aware of the patient's propensity of attacking other patients;[20] where a nurse failed to notify the physician that delivery of the patient's child was imminent, resulting in an unattended childbirth with consequent injuries;[21] and where a hospital's nurses made only one attempt to contact a patient's doctor in response to his severe pain.[22]   Among the cases where the common knowledge exception has not been applied, and a case lacking expert testimony was found fatally flawed, are instances where a nursing facility assistant negligently fractured the leg of a patient suffering from osteoporosis;[23] where a hospital was sued when a doctor left clips in a patient after surgery who then developed staph infection;[24] and where a surgeon failed to X-ray a wound to discover an imbedded metal fragment but completed surgery leaving the fragment inside.[25]   Several other cases on either side of the question, and upon varying facts, may also be found.

Defendant asserts that the case presented here falls well outside of the common knowledge exception, as the care of Raymond Schara was "complex" and as "MRSA itself is a very serious and complex epidemic."[26]   While the Court has no doubt that both propositions are correct, they are not germane to the precise issue presented here.   To prevail on her claim, Plaintiff will be required to

---

[20]*Juhnke v. Evangelical Lutheran Good Samaritan Soc.*, 6 Kan. App. 2d 744, 634 P.2d 1132 (1981).

[21]*Hiatt v. Groce*, 215 Kan. 14, 523 P.2d 320 (1974) (expert testimony on some issues, not on others).

[22]*Karrigan v. Nazareth Convent & Academy, Inc.*, 212 Kan. 44, 510 P.2d 190 (1973).

[23]*Cunningham v. Riverside Health Sys., Inc.*, 33 Kan. App. 2d 1, 99 P.3d 133 (2004).

[24]*St. Francis Reg'l Med. Ctr., Inc. v. Hale*, 12 Kan. App. 2d 614, 752 P.2d 129 (1988) (noting that such facts might qualify for the common knowledge exception in a suit against the doctor, but this claim was against the hospital).

[25]*Webb v. Lungstrum*, 223 Kan. 487, 575 P.2d 22 (1978).

[26]Doc. 69, p. 10.

produce evidence satisfying her burden of proof which demonstrates, among other matters: (1) that Raymond Schara more likely than now would not have redeveloped MRSA had the Vancomycin treatment continued through July 18, 2005, and not have been discontinued on July 11, 2005; and (2) that Raymond Schara's death was more likely than not due at least in significant part to his redevelopment of MRSA. While not raised in the instant motion, the Court assumes that expert testimony will be required for the Plaintiff to meet her burden on these issues.

The narrow issue raised here, however, assumes that those burdens will be met. In such an instance, Plaintiff asserts negligence against Pleasant Valley for its failure to provide Dr. McDermott with the instructions from Missouri Baptist Medical Center that the Vancomycin treatment be continued at least through July 18, 2005. Whether or not Pleasant Valley provided those instructions to Dr. McDermott is, the Court notes, itself a material issue of disputed fact. Co-Defendant Dr. McDermott has testified in his deposition that had Pleasant Valley put such instructions in Raymond Schara's medical file he would have gone through them, but he does not recall such records.[27] Dr. McDermott has further testified that had he seen the instructions he "certainly would have acted on that, for sure. . . . I would have either continued the dosage through July 18 or I would have picked the telephone up and called somebody."[28] Defendant's Reply[29] argues at great length that there is no disputed issue of material fact as to whether the instructions at question were in the Pleasant Valley Manor file provided to Dr. McDermott, but the length of both parties' arguments, and their

---

[27]Excerpts from Deposition of James M. McDermott, Doc. 74-5, p. 2 (deposition pages 63-66).

[28]*Id.*, at 3-4 (deposition pages 72, 74).

[29]Doc. 78.

respective competing citations to the record, belie that argument.  As to that question, there clearly is a disputed issue of fact precluding summary judgment.[30]

The narrow question presented here assumes that a jury has been convinced of the following facts:  (1) that Raymond Schara would not have redeveloped MRSA had the Vancomycin treatment continued through July 18; (2) that the reoccurrence of MRSA caused or significantly contributed to Raymond Schara's ultimate death; (3) that Pleasant Valley Manor did not provide Dr. McDermott with Missouri Baptist Medical Center's instructions that treatment be continued through July 18; and (4) that, had Dr. McDermott received such instructions, he would have followed a different course of medical treatment than he did.  Assuming these items are each proven, the question presented by this motion then is whether the professional failure of Pleasant Valley Manor to provide the instructions to Dr. McDermott presents a matter which is outside the knowledge of the average person, and requires the testimony of an expert to establish standard of care and to prove causation.

The Court thinks not.  The question of whether or not Pleasant Valley was legally negligent in failing to provide these instructions to Dr. McDermott does not arise absent the foregoing assumptions, and with them, does not present an issue outside of the common knowledge and experience of mankind generally.

---

[30] Curiously, Defendant's Reply argues that the only issue before the Court is "whether there remains a controverted fact as to the contents of Mr. Schara's medical chart at the time of his residency at Pleasant Valley Nursing" (Doc. 78, p. 6).  The Court thinks that the issue before it is the "Question Presented" in Defendant's Motion at Doc. 69, p. 6, whether it is entitled to summary judgment due to Plaintiff's failure to designate an expert with respect to Pleasant Valley's failure to meet the standard of care and causation.  Perhaps Defendant's statement in its Reply should be interpreted to mean that, if there is no controverted issue as to the contents of the medical chart, then the issue of expert testimony vis-a-vis the common knowledge exception is conclusively established.

With respect to the essential elements Kansas courts have established for analyzing the common knowledge exception: (1) Plaintiff has asserted a claim of medical negligence; (2) the care or result of the care is patently bad [assuming the foregoing, the patient died as a result]; and (3) a person without pertinent medical knowledge can assess the wrongfulness of failing to provide the doctor with the  instructions which, if followed, would have prevented Raymond Schara's death, without requiring the assistance of expert testimony.

Therefore, because the Court concludes that expert testimony is not required to demonstrate, in such a scenario and upon such assumptions, that Pleasant Valley failed to meet the required standard of care and that such failure caused the relevant injuries, but that such matters are within the common knowledge and experience of mankind generally, Defendant Pleasant Valley's Motion for Summary Judgment is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Pleasant Valley Nursing, L.L.C.'s Motion for Summary Judgment (Doc. 69) is hereby denied.

**IT IS SO ORDERED.**

Dated this 22nd day of July, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE